J-S04026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HYKEIM DORSEY-GRIFFIN | : | |
| | : | |
| Appellant | : | No. 1718 EDA 2022 |

Appeal from the PCRA Order Entered June 28, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002417-2017

BEFORE:   MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                                    **FILED MAY 31, 2023**

Appellant, Hykeim Dorsey-Griffin, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

A prior panel of this Court set forth the relevant facts of this appeal as follows:

> On October 12, 2016, around 7:30 p.m., [Decedent] and [Appellant's Brother] engaged in a verbal altercation regarding the sale of narcotics near the corner of Bristol and Franklin Streets in the Hunting Park section of Philadelphia. The altercation, which included shoving, was captured on video.  Appellant and two other men, who subsequently gave statements to Philadelphia Police Detectives, observed the altercation.  The argument ceased and all individuals left the scene.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

At approximately 9:40 p.m., video surveillance showed Appellant and Joel Medina approach the area of 4248 North Franklin Street, where Decedent and three individuals were sitting on a front step. They engaged in "pleasant conversation" and there was no argument or fighting. After a few minutes, Appellant turned to Decedent "and said something to the effect of, 'This is for my brother,' or, 'You can't eff with—F-U-C-K—with my brother.'" Appellant, who was within three feet of Decedent, revealed a firearm and fired 12 shots at Decedent. Decedent was hit 11 times, including in the head. Appellant and Medina then walked away.

Medina, who initially approached the group with Appellant, as well as one of the men on the front steps gave statements to Philadelphia Police detectives and identified Appellant as the shooter. After the shooting, Medina asked Appellant why he shot Decedent, to which Appellant replied, "fuck him." The Philadelphia Medical Examiner's Office determined Decedent died from multiple gunshot wounds and the manner of death was homicide. The Philadelphia Firearms Identification Unit examined ballistic evidence recovered from the crime scene and determined that all twelve fired cartridge casings, as well as projectiles and fragments taken from Decedent's body, were fired from the same gun.

On January 8, 2017, Appellant was charged with murder and related offenses. On May 14, 2018, Appellant entered into a negotiated guilty plea to third-degree murder and persons not to possess firearms. During this guilty plea hearing, Appellant and the trial court had the following exchange:

> The Court: … Do you want to plead guilty?
>
> [Appellant]: It doesn't even matter.
>
> The Court: No. It matters. It really does. If you don't want to plead guilty, I'm not going to take your guilty plea obviously. All right?
>
> [Appellant]: Yeah.

The Court: What is the "yeah" about?

[Appellant]: It's a yeah.

The Court: To which one?

[Appellant]: Pleading guilty.

The Court: Which question? Do you want to plead guilty?

[Appellant]: Yeah.

The Court: Okay. Because you can go on with your jury trial. Do you understand that?

[Appellant]: Yeah.

\* \* \*

The Court: The agreed to sentence in this case is a total of 25 to 50 years. And the way it's going to be split up is you will receive 20 to 40 years on the third-degree murder conviction, then five to ten years to run consecutively on the Violation of the Uniform Firearms Act conviction. So "consecutively" means that the five starts after the 20 ends, so that brings it to a total of 25 to 50 years. Do you understand that?

[Appellant]: Yeah.

On June 7, 2018, the trial court conducted a sentencing hearing. At the beginning of the hearing, Appellant stated he "took the [plea] deal under duress." When the court asked what the duress was, Appellant stated, "It's a couple different things." The trial court advised Appellant, "You don't have to plead guilty under duress," and that he could file a motion to withdraw his plea, which the court would consider against any response by the Commonwealth. The following exchange occurred:

The Court: Okay. I mean, do you want to file a petition to withdraw your guilty plea?

- 3 -

> [Appellant]:     We can move forward.
>
> The Court:     With your sentencing?
>
> [Appellant]:     Uh-huh. Yes.
>
> The Court:     Are you sure about that? Because you really can have a jury trial. And it's not a trick. This is not a trick question.
>
> [Appellant]:     No. I know. I understand.
>
> The Court:     You can have a waiver trial, if they agree. That means I hear the case. You can have a jury trial. Your right is actually to have a jury trial. You can just say, "No, Judge. I want my jury trial." And I don't have a problem with that.
>
> [Appellant]:     We can move forward with sentencing.

> The trial court then imposed the negotiated sentence of 20 to 40 years' incarceration for third-degree murder, and a consecutive 5 to 10 years' incarceration for the firearms charge, for an aggregate term of 25 to 50 years' incarceration. Appellant did not file any post-sentence motions.

*Commonwealth v. Dorsey-Griffin*, No. 1871 EDA 2018, unpublished memorandum at 1-5 (Pa.Super. filed July 7, 2020), *appeal denied*, 662 Pa. 495, 240 A.3d 112 (2020) (internal emphasis, footnote, and record citations omitted). This Court affirmed the judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on October 15, 2020.

Appellant timely filed a *pro se* PCRA petition on December 28, 2020. The court appointed counsel, who filed an amended PCRA petition on October 29, 2021. In the amended petition, Appellant argued that plea counsel was

ineffective for failing "to ensure that the plea was entirely voluntary and knowing." (Amended PCRA Petition, filed 10/29/21, at 8). The Commonwealth filed a motion to dismiss the petition on March 14, 2022. On May 25, 2022, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not file a response to the Rule 907 notice, and the court dismissed the petition on June 28, 2022.

Appellant timely filed a notice of appeal on July 1, 2022. On July 18, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 24, 2022.

Appellant now raises one issue for this Court's review:

> Did the PCRA Court err in finding that Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated by counsel's ineffective failure to ensure that Appellant's decision to take a plea was entirely voluntary?

(Appellant's Brief at 2).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*,

- 5 -

256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

On appeal, Appellant emphasizes that his relationship with plea counsel "deteriorated to the point where there was little to no productive communication between them." (Appellant's Brief at 13). Appellant contends that he had one conversation with counsel prior to the guilty plea hearing. At that time, Appellant asserts that counsel did not discuss the Commonwealth's evidence. Rather, "counsel simply told Appellant to take the plea" without exploring the "pros and cons" of proceeding to a trial. (**Id.** at 15). Appellant insists that "he only agreed to take the plea because he had been pressured to do so." (**Id.**) Under these circumstances, Appellant argues that counsel's ineffectiveness caused him to enter an involuntary and unknowing plea. Appellant concludes that he is entitled to relief, and this Court must either vacate his guilty plea or remand the matter for an evidentiary hearing on plea counsel's ineffectiveness. We disagree.

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no

reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).  The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail.  *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]"  *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)).  "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."  *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests."  *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the

alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Kelley, supra* at 1013 (quoting *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa.Super. 2007)). "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." *Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa.Super.

- 8 -

2004) (quoting **Commonwealth v. Payson**, 723 A.2d 695, 700 (Pa.Super. 1999)).

"In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea." **Commonwealth v. Hart**, 174 A.3d 660, 664-65 (Pa.Super. 2017). "A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." **Commonwealth v. Reid**, 117 A.3d 777, 782 (Pa.Super. 2015) (quoting **Commonwealth v. Morrison**, 878 A.2d 102, 107 (Pa.Super. 2005)). "Furthermore, nothing in [Pa.R.Crim.P. 590] precludes the supplementation of the oral colloquy by a written colloquy that is read, completed and signed by the defendant and made a part of the plea proceedings." **Commonwealth v. Bedell**, 954 A.2d 1209, 1212-13 (Pa.Super. 2008), *appeal denied*, 600 Pa. 742, 964 A.2d 893 (2009). **See also** Pa.R.Crim.P. 590, *Comment*.

"A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Commonwealth v. Pier**, 182 A.3d 476, 480 (Pa.Super. 2018) (quoting **Commonwealth v. Pollard**, 832 A.2d 517, 523 (Pa.Super. 2003)). "[T]he law does not require that a defendant be pleased with the outcome of

his decision to plead guilty. The law requires only that a defendant's decision to plead guilty be made knowingly, voluntarily, and intelligently." *Commonwealth v. Jabbie*, 200 A.3d 500, 506 (Pa.Super. 2018). Further, "[t]he entry of a negotiated plea is a 'strong indicator' of the voluntariness of the plea." *Reid, supra* at 783 (quoting *Commonwealth v. Myers*, 642 A.2d 1103, 1106 (Pa.Super. 1994)).

Instantly, the PCRA court reviewed the record and determined that counsel did not pressure Appellant into entering the plea.

> [T]he colloquy of [Appellant] fully complied with the requirements cited above. The charges to which [Appellant] pleaded guilty, as well as the factual basis for the plea, was fully set out on the record. Additionally, [Appellant]'s right to a jury trial, and what it entailed, were fully explained to him during the guilty plea colloquy. [Appellant] was made aware of the potential ranges of sentences and fines he faced should he choose not [to] plead guilty, and the court strongly emphasized that it was not required to accept [Appellant's] plea, especially if he was pleading under duress. Importantly, when the court asked [Appellant] during his colloquy if anyone threatened him or promised him anything to force him to plead guilty, [Appellant] answered, "No." At the time of sentencing, when [Appellant] announced that he pleaded guilty under duress, the court asked him what duress he faced and [Appellant] could not name anything specific, and simply stated, "It's a couple different things." As such, the court did not find that [Appellant] entered his guilty plea under duress.

(PCRA Court Opinion, filed 8/26/22, at 5) (record citations omitted). Our review of both the written and oral colloquies confirms the court's analysis.

Although Appellant now complains that plea counsel did not advise him about the "pros and cons" of going to trial, the record suggests otherwise.

Appellant first announced his dissatisfaction with counsel at the beginning of the plea hearing, claiming "he don't care what happens to me." (N.T. Plea Hearing, 5/14/18, at 5). The court asked for a response to Appellant's allegation, which counsel denied as follows:

> What I try to do is I lay out the three options again: the plea, the voluntary intoxication [defense,] and the claim of innocence. And I tried to explain for, probably, the 50th time that I can't go—if he doesn't want to plea, which to this point, he hasn't told me he is rejecting the [Commonwealth's offer of] 25 to 50. Assuming that is off the table, what I tried to explain was that I can't go voluntary intoxication and innocence. The voluntary intoxication is an affirmative defense.

(*Id.* at 6). Thereafter, the court provided counsel with one more opportunity to speak to Appellant before Appellant decided on the entry of a plea. (*See id.* at 8). Almost three hours later, Appellant returned to the courtroom and entered the plea. (*Id.* at 9).

Thereafter, Appellant confirmed he understood that his execution of a written colloquy demonstrated the voluntariness of his plea:

> The Court: If you complain later on to the Superior Court and you said to them, you know, my plea wasn't voluntary, they would take a look at this [written colloquy] form and they would see that you signed it. People don't usually sign legal documents this important that they didn't go through with their lawyer and that they didn't fully understand. So by signing the form, that tends to show that your plea is voluntary. That is one thing they would look at, in other words, and say, "Well, you signed that legal document voluntarily." Do you understand that?
>
> [Appellant]: Yeah.

(*Id.* at 20).

- 11 -

While Appellant might not be pleased with the outcome of his decision to plead guilty, the law requires only that he made a knowing, voluntary, and intelligent decision to plead guilty. ***See Jabbie, supra***. Appellant is now bound by the statements made in the oral and written colloquies, which indicate that he wanted to enter the plea. ***See Pier, supra***. Under the totality of these circumstances, we agree with the PCRA court's conclusion that Appellant's ineffectiveness claim lacks arguable merit. ***See Smith, supra***. Accordingly, we affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2023